IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LONNIE CHARLES CHALMERS, § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CIVIL CASE NO. 3:22-CV-585-G-BK |
| § | |
| CITY OF DALLAS, DALLAS POLICE § | |
| DEPARTMENT, DALLAS POLICE § | |
| OFFICER BAZZIE 11022, DALLAS § | |
| POLICE OFFICERS AT SCENE YET § | |
| IDENTIFIED, AND DALLAS POLICE § | |
| OFFICER SGT. KELLY 9876, § | |
|     DEFENDANTS. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned magistrate judge for pretrial management. The Court now considers Defendants' respective *Motions to Dismiss*. Doc. 12; Doc. 13; Doc. 14. For the reasons that follow, the motions should be **GRANTED**.

**I. BACKGROUND**

In March 2022, Plaintiff filed this *pro se* action stemming from events that took place at a local restaurant. According to Plaintiff, on the day in question, he went to a Golden Chick restaurant, placed an order for Chinese food at the counter, paid, and sat down to wait. Doc. 3 at 4. After he picked up his order, he proceeded to a different register to place a to-go order for chicken. Doc. 3 at 4. Upon realizing that his chicken order was incorrect, Plaintiff attempted to address the situation with the cashier, but a "discord of personality's [sic]" arose. Doc. 3 at 4. While a second cashier was attempting to refund Plaintiff's money, he continued to "exchange

words" with the first cashier.  Doc. 3 at 4.  The restaurant owner then approached Plaintiff with a bat and repeatedly ordered him to leave, and shortly thereafter an employee with a stun gun also confronted him.  Doc. 3 at 4.  Plaintiff sat down at a table to call 911, but the restaurant owner and several employees pulled him out of his chair, dragged him out of the restaurant, and threw his money on the ground.  Doc. 3 at 4-5.  Around this time, Dallas Police Department ("DPD") Officer Bazzie ("Bazzie") and other DPD officers arrived at the scene.  Doc. 3 at 5.

After some discussion, during which DPD officers did not allow Plaintiff "to fully explain the situation," Bazzie went in the restaurant to investigate Plaintiff's claim that restaurant personnel had assaulted and robbed him.  Doc. 3 at 5, 7.  Upon her return, Bazzie informed Plaintiff she did not see any evidence he had been assaulted on the restaurant's security footage and that "Plaintiff caused this problem."  Doc. 3 at 5, 7.  Plaintiff denied this and told Bazzie "you are a liar at least 3 times straight to her body camera and her face."  Doc. 3 at 5, 7.  Bazzie then "made [Plaintiff] the criminal on the scene by detaining [him]" so she could issue a criminal trespass citation, told him to stop talking, and repeatedly threatened to take him to jail.  Doc. 3 at 6.

Supervising DPD Sergeant Kelly ("Kelly") subsequently arrived and informed Plaintiff the restaurant owner was within his rights to demand that Plaintiff leave his store, at which point Bazzie again threatened to take Plaintiff to jail.  Doc. 3 at 6.  Plaintiff left and proceeded directly to a nearby DPD substation to register a complaint.  Doc. 3 at 6-7.  When Kelly arrived at her supervisor's behest, she "failed to help" Plaintiff and instead issued him an additional report number for his complaint of assault and robbery.  Doc. 3 at 6.

2

Plaintiff sues under 42 U.S.C. §§ 1983 and 1985[1] for: (1) violation of his Fourth Amendment rights based on his seizure without probable cause; and (2) violation of his right to equal protection and his First Amendment right to "petition the [DPD] for help because a crime has been committed against his body because he [is] black and wanted a refund." Doc. 3 at 6-12. Plaintiff seeks compensatory and punitive damages, injunctive and declaratory relief, and attorneys' fees and costs. Doc. 3 at 13-14. Defendants now move to dismiss Plaintiff's section 1983 claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. APPLICABLE LAW

### A. Rule 12(b)(6)

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To overcome a Rule 12(b)(6) motion, a plaintiff's "complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. Twombly, 550 U.S. at 572. Nevertheless, a complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citation and quotation omitted).

---

[1] While Plaintiff also cites 42 U.S.C. § 1988, Doc. 3 at 14, this appears to be in support of his request for attorneys' fees which will be addressed *infra*.

### B. Section 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation omitted). To state a claim under section 1983, a plaintiff must allege facts showing the defendant (1) deprived him "of a right 'secured by the Constitution and the laws' of the United States" and (2) was acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978) (citation omitted).

### C. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). The qualified immunity inquiry involves two prongs which the Court must answer affirmatively to subject an official to liability: (1) whether the facts a plaintiff has alleged establish a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 232. A court may begin its assessment with either prong. *Id.* at 236 (*overruling in part Saucier v. Katz*, 533 U.S. 194 (2001)). "Qualified immunity questions should be resolved 'at the earliest possible stage in litigation.'" *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *see, e.g.*, *Turner v. Lieutenant Driver*, 848 F.3d 678, 683 (5th Cir. 2017) (addressing a qualified immunity defense raised in a motion to dismiss).

4

### D. *Municipal Liability*

A municipality does not automatically incur section 1983 liability for injuries caused solely by its employees, and it cannot be held liable under section 1983 on a *respondeat superior* theory. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978); *Johnson v. Deep East Tex. Reg'l Narcotics Task Force*, 379 F.3d 293, 308 (5th Cir. 2004). Rather, to establish municipal liability, "a plaintiff must show that (1) an official policy (2) promulgated by a municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted).

A policy or custom can be either (1) a policy statement or rule that is officially promulgated by the county's lawmaking officers or a delegated official; or (2) "[a] persistent, widespread practice of [county] officials or employees, which . . . is so common and well settled as to constitute a custom that fairly represents county policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). Knowledge on the part of a policymaker that a constitutional violation will likely result from a given policy or custom is an essential element of section 1983 municipal liability. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). A plaintiff thus must demonstrate either actual or constructive knowledge of the custom, which is attributable either to the governing body of the municipality or to an official who has been designated as a policymaker. *Bennett*, 735 F.2d at 862. Where an official policy or practice is unconstitutional on its face, it is assumed that a policymaker is aware of both the policy and that a constitutional violation will most likely occur. *Burge*, 336 F.3d 370. Where, however, an alleged policy or custom is facially innocuous, a plaintiff is required to show that "it was promulgated with deliberate indifference to the known or obvious consequences that

5

constitutional violations would result." *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (citation and internal quotation marks omitted). Finally, to show that the policy at issue was the moving force behind the constitutional violation, there "must be more than a mere 'but for' coupling between cause and effect"; the policy "must be closely related to the ultimate injury" and have "actually caused" the constitutional violation complained of. *Johnson*, 379 F.3d at 310 (citations omitted).

## III. ANALYSIS

### A. *Dallas Police Department*

The DPD moves to dismiss Plaintiff's claims on the basis that it is not a jural entity capable of being sued. Doc. 12 at 3-5. Plaintiff did not respond to the DPD's motion, but in his response to the dismissal motion filed by the City of Dallas (the "City"), he acknowledges he has no basis to seek redress from the DPD as it is not a "stand alone entity." Doc. 20 at 5-6. As the parties correctly agree, the DPD is not a jural entity subject to suit, and Plaintiff's claims against the DPD should thus be **DISMISSED**. *See Williams v. Dall. Police Officer*, 3:19-CV-3046-B-BH, 2021 WL 4552281, at *4 (N.D. Tex. Oct. 5, 2021) (Boyle, J.).

### B. *Officer Bazzie and Sergeant Kelly*[2]

#### 1. *Unlawful Detention Under the Fourth Amendment*

Bazzie argues that qualified immunity bars Plaintiff's Fourth Amendment claim against her because Plaintiff failed to plead sufficient facts showing she initially detained Plaintiff without legal justification or that she lacked reasonable suspicion to detain him for criminal

---

[2] In his response to Bazzie and Kelly's motion to dismiss, Plaintiff names various other DPD officers present at the scene who he claims also violated his rights. *See* Doc. 20 at 7. Those allegations are not properly before the Court.

6

trespassing after she viewed the restaurant's video footage of the altercation. Doc. 14 at 2-3, 6-7. In particular, Bazzie maintains Plaintiff's allegations describe a lawful investigatory stop and Plaintiff yielding to Bazzie's initial assertion of authority before leaving after she informed Plaintiff there was no evidence he had been assaulted. Doc. 14 at 6. Kelly asserts Plaintiff's Fourth Amendment claim against her should be dismissed because Plaintiff does not allege that she was personally involved in his detention. Doc. 14 at 6.

Plaintiff responds that the 911 incident report reflects that he was a crime victim, it is clear "from the record" that he did not engage in any conduct warranting his detention, and "Defendants" created their own narrative at the scene despite the evidence.³ Doc. 20 at 2-5. Plaintiff maintains Kelly, Bazzie—and a host of other DPD officers he did not name in his complaint—violated his clearly established constitutional right to be free from an unlawful detention. Doc. 20 at 7-10.

"The Fourth Amendment does not proscribe all contact between the police and citizens, but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)). There are "three tiers of police-citizen encounters: communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause." *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. Unit B 1982); *see also Florida v. Bostick*, 501 U.S. 429, 439 (1991) ("The Fourth Amendment . . . does not proscribe voluntary

---

³ While Plaintiff repeatedly refers to DPD officers' body camera footage and various documents, the Court will not consider this evidence given the procedural posture of the case.

cooperation" with police). Accordingly, if a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Bostick*, 501 U.S. at 434 (citation omitted). "Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *Delgado*, 466 U.S. 210, 216 (1984) (holding that an initially consensual encounter between a police officer and a citizen can transform into a seizure only if "a reasonable person would have believed" he was not free to leave) (citation omitted).

The "reasonable person" standard is an objective one and "is concerned not with the citizen's subjective perception . . . but only with what the officers' words and actions would have conveyed to a reasonable and innocent person." *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003) (citations omitted). Courts consider several non-exclusive factors in determining whether a reasonable person would feel free to terminate an encounter with law enforcement: "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with an officer's request might be compelled." *Id.* at 337 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

The analysis in this case is best conducted in two parts — first, Plaintiff's initial contact with Bazzie, followed by his interactions with Bazzie and Kelly after Bazzie reviewed the restaurant's security camera footage.

Plaintiff's allegations with respect to the initial encounter fail to invoke Fourth Amendment protections. By his own account, Plaintiff initiated the encounter by calling 911.

Doc. 3 at 4. When Bazzie and other officers arrived, they did not allow him "to fully explain the situation," and when Bazzie asked him what he wanted her to do, Plaintiff responded "I want everyone who put they hands on my person arrested for assault/battery and robbery/attempt [sic] robbery." Doc. 3 at 7. Bazzie stated "I will go inside and look at the security camera" to which Plaintiff responded "OK." Doc. 3 at 7. Bazzie then entered the restaurant to investigate. Doc. 3 at 4-5. While Plaintiff alleges other DPD officers had him "restrained on the ground like a rat trapped in a corner," Doc. 3 at 5, the overall context actually indicates Plaintiff sat outside the restaurant while he waited for Bazzie to return, Doc. 3 at 7. No detention occurred at this point. First, while there were allegedly several DPD officers present, Plaintiff does not allege any of them displayed a weapon or physically touched him. *See Mask*, 330 F.3d at 337. Nor does he indicate the officers gave any verbal cues suggesting he was compelled to remain at the scene.[4] *Id.* Under these circumstances, no objectively reasonable person in Plaintiff's position would have believed he was not free to leave. See *Delgado*, 466 U.S. at 216.

Once Bazzie emerged from the restaurant, however, the dynamic apparently shifted. Taking Plaintiff's allegations as true, after reviewing the security footage, Bazzie informed Plaintiff she did not see any evidence he had been assaulted and that "Plaintiff caused this problem." Doc. 3 at 5, 7. Plaintiff denied this and told Bazzie "you are a liar at least 3 times straight to her body camera and her face." Doc. 3 at 5, 7. Bazzie then "made [Plaintiff] the criminal on the scene by detaining [him]" so she could issue a criminal trespass citation, told him

---

[4] Indeed, Plaintiff complains the officers made light of the situation by laughing at him and mocking his complaints with one Doe officer allegedly telling Plaintiff to "hire a lawyer and sue us." Doc. 3 at 5-6.

9

to stop talking, and repeatedly threatened to take him to jail.[5]  Doc. 3 at 6.  Kelly subsequently arrived and informed Plaintiff the restaurant owner was within his rights to demand Plaintiff leave his store at which point Bazzie again threatened to take Plaintiff to jail.  Doc. 3 at 6.  Plaintiff left the scene and proceeded to a nearby DPD substation to complain.  Doc. 3 at 6-7.

These allegations indicate Bazzie briefly detained Plaintiff and cited him for criminal trespassing which necessitates a probable cause showing.  *Berry*, 670 F.2d at 591.  A person commits the misdemeanor of criminal trespass if he "enters or remains on or in property of another ... without effective consent and the person . . . received notice to depart but failed to do so."  *State v. Meru*, 414 S.W.3d 159, 163 (Tex. Crim. App. 2013) (quoting TEX. PENAL CODE § 30.05(a)(2)).  "Notice" includes an "oral or written communication by the owner or someone with apparent authority to act for the owner."  TEX. PENAL CODE § 30.05(b)(2)(A).

"Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of the arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."  *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (emphasis in original) (quotation omitted).  To overcome a qualified immunity defense, Plaintiff must not only show that Bazzie lacked probable cause but also that she was "objectively unreasonable in believing there was probable cause for the [citation]."  *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017).  Put differently, qualified immunity protects officers if they had "arguable (that is, reasonable but

---

[5] While Plaintiff's complaint indicates Bazzie charged him with criminal trespassing, he states in his response to Bazzie and Kelly's motion that he was merely issued a trespass warning.  Doc. 20 at 8.  For purposes of this motion, however, the Court accepts the allegations in Plaintiff's complaint as true.  *Twombly*, 550 U.S. at 572.

mistaken) probable cause for the [citation]." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 207 (5th Cir. 2009).

The Court concludes Bazzie had probable cause to believe Plaintiff had committed the offense of criminal trespassing. The allegations in Plaintiff's complaint indicate he refused to leave the restaurant after the owner ordered him to do so following a dispute about his order. Doc. 3 at 4. This led the owner and other store personnel to physically remove him from the premises, and Bazzie personally observed him being dragged out the door. Doc. 3 at 5-6. After reviewing the restaurant's security footage, Bazzie told Plaintiff she did not see any evidence that he had been assaulted or robbed and saw only Plaintiff throwing his receipt on the counter. Doc. 3 at 7. Based on Plaintiff's admitted refusal to leave the restaurant following the owner's demand, Bazzie had arguable probable cause to cite him for criminal trespassing. *See Meru*, 414 S.W.3d at 163; TEX. PENAL CODE § 30.05(a)(2)). While Plaintiff accuses Bazzie of lying about the security footage, "subjective intent, motive, or even outright animus are irrelevant in a determination of qualified immunity based on arguable probable cause to arrest." *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000).

Plaintiff's claim against Kelly fares no better. Supervisory officials are not liable under section 1983 for the actions of subordinates on a theory of vicarious liability. *Turner*, 848 F.3d at 695. Accordingly, Kelly is not liable for any acts which occurred before she arrived on the scene. *Id.* The only remaining issue is whether Plaintiff adequately alleges Kelly violated his Fourth Amendment rights after she arrived. *Id.* To make this showing, Plaintiff must demonstrate Kelly was either personally involved in the alleged constitutional deprivation or engaged in wrongful conduct causally connected thereto. *Id.* According to Plaintiff's allegations Kelly's only involvement was (1) informing Plaintiff that the restaurant owner had the right to

11

demand he leave the premises; and (2) "failing to help him" after he complained to Kelly's superior. Doc. 3 at 6. This is not sufficient to plead a Fourth Amendment claim. Even assuming Kelly tacitly or explicitly approved of Bazzie's actions, as stated above, Bazzie had arguable probable cause to find Plaintiff was unlawfully trespassing on the property. As such, Plaintiff's claim that Kelly refused to help him following his complaint does not implicate the Fourth Amendment.

Because Plaintiff has not pled sufficient facts to establish that either Bazzie or Kelly violated his Fourth Amendment rights, they are entitled to qualified immunity and Plaintiff's claims against them should be **DISMISSED**. *See Defrates v. Podany*, 789 F. App'x 427, 431-32 (5th Cir. 2019) (holding off-duty police officer had probable cause to arrest a parent at his son's off-campus school event, and thus was entitled to qualified immunity, where the officer knew the school had issued the parent a criminal trespass warning, and a school administrator told the officer the parent had refused to leave); *Pena v. Bexar Cty., Tx*., 726 F. Supp. 2d 675, 693 (W.D. Tex. 2010) (holding court security officers were entitled to qualified immunity on Fourth Amendment claim brought by a disabled individual arrested for criminal trespass as officers reasonably believed the arrestee's animal was not a service dog which violated county policy).

    2. *First Amendment Claim*

The extent of Plaintiff's allegations with respect to his First Amendment claim is that "Defendants," particularly Bazzie, failed to take his assault/robbery report seriously and retaliated against him by treating him like a criminal, which chilled his rights to call 911 for assistance and seek justice as a crime victim.[6] Doc. 3 at 1, 6-9, 11-12. Bazzie and Kelly argue Plaintiff has not pled facts

---

[6] While Plaintiff further asserts "Defendants" continue to "chill [his] rights" by delaying responses to his open records requests, Doc. 3 at 9-10, the undersigned has not located any case law suggesting this implicates First Amendment concerns. *Cf. Nabelek v. Bradford*, 228 S.W.3d

establishing a First Amendment retaliation claim because there was probable cause to believe Plaintiff was trespassing on the restaurant's property. Doc. 14 at 7-8. While Plaintiff does not directly respond to this argument, the Court will nonetheless address the merits of his claim.

The First Amendment generally prohibits government officials from retaliating against an individual for engaging in protected speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (internal quotation marks and citations omitted). The elements of such a claim in the present context are (1) the plaintiff engaged in constitutionally protected activity; (2) the officer's actions injured the plaintiff such that the injury "would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the officer's allegedly unlawful actions were substantially motivated by their opposition to the plaintiff's constitutionally protected conduct. *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

Plaintiff's claim that either Bazzie or Kelly retaliated against him for calling 911 and painted him as a trespasser are not supported by the facts as alleged in his complaint. Assuming Plaintiff's complaint of criminal activity constituted protected speech, he has not set forth any plausible facts suggesting that either Bazzie's or Kelly's acts would chill a person of ordinary firmness from reporting a crime. *Alexander*, 854 F.3d at 308. Indeed, Plaintiff acknowledges he went to a DPD substation to complain about his treatment directly after leaving the restaurant, where Kelly issued him another incident report pertaining to his assault/robbery complaint. Doc. 3 at 6.

---

715, 720 (Tex. App.—Houston [14th Dist.] 2006, *pet. denied*) (holding that statute allowing records custodians to refuse information requests from prisoners did not violate prisoner's First Amendment right to petition the government for redress of his grievances).

Nor does Plaintiff plausibly allege that either officers' actions were substantially motivated by their opposition to him calling 911 or complaining about his treatment at the restaurant. *Alexander*, 854 F.3d at 308. Rather, the complaint indicates Bazzie discussed the situation with Plaintiff when she arrived, asked him what he wanted her to do, and went inside the restaurant to investigate his claims with his acquiescence. Doc. 3 at 7. Furthermore, assuming Bazzie did cite Plaintiff for criminal trespassing, that cannot be reasonably attributed to his report of criminal activity because probable cause supported the trespassing charge as discussed *supra*. *See Alexander*, 854 F.3d at 308 ("Furthermore, any adverse action that was taken once the arrest was effected cannot be reasonably attributed to Alexander's alleged use of an expletive, as Alexander was ultimately arrested for resisting a search and not for any unfortunate word choice."). Accordingly, Plaintiff's First Amendment claims against Bazzie and Kelly should be **DISMISSED**.

### 3. Equal Protection Claim

The gist of Plaintiff's equal protection claim is that "Defendants" treated him as they did because he is black and was attempting to report a crime. *See* Doc. 3 at 5 (alleging Bazzie threatened to take him to jail "because he is Black and can't be right"). Bazzie and Kelly argue this claim should be dismissed because Plaintiff (1) does not allege he is a member of a protected class and (2) has not pled they treated him differently than other crime victims who call 911. Doc. 14 at 8-9.

The Court disagrees as to their first point because Plaintiff plainly alleges his membership in a protected racial class. Doc. 3 at 5. The second contention will be discussed *infra*. "The Equal Protection Clause directs that persons similarly situated should be treated alike." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citation omitted), *decision clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999). To maintain an equal protection claim, a plaintiff generally must allege he "received treatment

14

different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro, L.L.C.*, 568 F.3d at 212 (citation omitted)

Plaintiff's allegation that Bazzie and Kelly treated him differently than other crime victims because he is black is entirely conclusory and thus insufficient to support an equal protection claim. *Collins*, 224 F.3d at 498 (noting that a court cannot "accept as true conclusory allegations or unwarranted deductions of fact."). Even a "[police] officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation." *Williams*, 180 F.3d at 706 ("Where the conduct at issue consists solely of speech, there is no equal protection violation."); *Club Retro, L.L.C.*, 568 F.3d at 213 (holding plaintiffs failed to state an equal protection claim where they did not allege any defendant said they "targeted [the club] because it was minority-owned and attracted a mixed-race and mixed-ethnicity crowd," and the purported absence of similar raids on a club that catered to white patrons did not carry plaintiffs' burden). Moreover, to the extent Plaintiff implies either Bazzie or Kelly violated his equal protection rights by failing to investigate and charge the restaurant personnel who allegedly attacked him, he has no constitutional right in that regard. *See Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (holding there is no constitutional right to have an individual investigated and prosecuted). Accordingly, Plaintiff's equal protection claim should be **DISMISSED**.

### C. City of Dallas

The City argues Plaintiff's section 1983 claims should be dismissed because (1) he has not sufficiently alleged that either Bazzie or Kelly violated any of his constitutional rights; (2) he has not pled the *Monell* factors; and (3) his official-capacity claims against Bazzie and Kelly are duplicative of his claims against the City. Doc. 13 at 4-7. Additionally, the City requests that the Court dismiss Plaintiff's claims for punitive damages, attorneys' fees, and declaratory and

15

injunctive relief because he is not entitled to punitive damages or a fee award and has not demonstrated that either declaratory or injunctive relief is warranted. Doc. 13 at 8-9. While Plaintiff generally argues he can establish *Monell* liability, he does not otherwise respond to the City's arguments. *See* Doc. 21, *passim*.

Upon consideration, the Court finds the City's arguments are well taken on all points. First, because Plaintiff has failed to adequately state any claim against either Bazzie or Kelly, there is no basis for liability on the part of the City. *See Alpha v. Hooper*, 440 F.3d 670, 672 (5th Cir. 2006) (holding that where plaintiff's constitutional claims failed, there was no basis for county's liability). Additionally, Plaintiff's complaint does not adequately allege a municipal liability claim under *Monell*. Plaintiff does not point to a policymaker, an official City policy or custom of violating its citizens' First, Fourth, or Fourteenth Amendment rights in the manner described, or assert that a City policy or custom was the moving force behind the alleged violations. *Monell*, 436 U.S. at 694. Accordingly, Plaintiff's claims against the City should be dismissed.

Plaintiff's official-capacity claims against Bazzie and Kelly also should be dismissed because the claims "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55); *see also Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) (holding that when a party sues a government employee in her official capacity as well as the governmental entity itself, "[t]he official-capacity claims and the claims against the governmental entity essentially merge.").

Plaintiff also is not entitled to attorneys' fees as he is representing himself, and punitive damages are not available against a municipality in a section 1983 action. *See Kay v. Ehrler*, 499

16

U.S. 432, 435 (1991); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Plaintiff additionally cannot show that injunctive relief is warranted. To have standing, a plaintiff seeking such relief must demonstrate that he has sustained or is in immediate danger of sustaining a direct injury as the result of the challenged conduct. *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) (citation omitted). The injury or threat thereof must be both real and immediate, not merely hypothetical. *Id.* at 563 n.23 (citation omitted). Plaintiff's suggestion that he may face future conflicts involving DPD officers is nothing more than conjecture. *See* Doc. 3 at 13. Finally, because Plaintiff has not stated any viable claims, he is not entitled to declaratory relief. *See Green v. JPMorgan Chase Bank, N.A.*, 937 F.Supp.2d 849, 864 (N.D. Tex. 2013).

## IV. LEAVE TO AMEND

A court may dismiss a claim that fails to meet the pleading requirements, but "should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). Plaintiff has not previously been granted leave to amend. Thus, if this recommendation is accepted, Plaintiff should be given the opportunity to file an amended complaint. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) (holding that dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified).

## V. CONCLUSION

For the reasons set forth above, Defendants' respective *Motions to Dismiss* should be **GRANTED** and Plaintiff's claims should be **DISMISSED WITHOUT PREJUDICE**. However, if Plaintiff fails to cure the deficiencies noted herein by filing an amended complaint

17

within 14 days of the acceptance of this recommendation, upon Defendants' re-urging, Plaintiff's claims should be dismissed with prejudice.

      **SO RECOMMENDED** on November 16, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).