IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LONNIE CHARLES CHALMERS, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF DALLAS, DALLAS POLICE DEPARTMENT, DALLAS POLICE OFFICER BAZZIE 11022, DALLAS POLICE OFFICERS AT SCENE YET IDENTIFIED, DALLAS POLICE OFFICER SGT. KELLY 9876, OFFICER MASON JR. 11742, OFFICER RAMIREZ ORTIZ 11666, OFFICER CHARMOLI 11216, OFFICER MULLINS 11587, OFFICER BRESNAHAN 11791, OFFICER MARTINEZ 11753, OFFICER RAZO 11569, OFFICER GARCIA ROMERO, | § § § § § § § § § § § § | CASE NO. 3:22-CV-585-G-BK |
| DEFENDANTS. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned magistrate judge for pretrial management. The Court now considers *Defendants Bazzie and Kelly's Motion to Dismiss* and *Defendant City of Dallas's Motion to Dismiss Plaintiff's First Amended Complaint*. Doc. 30; Doc. 31. For the reasons that follow, the motions should be **GRANTED**.

**I. BACKGROUND**

In March 2022, Plaintiff filed this *pro se* action against the City of Dallas, City of Dallas police Officer Bazzie ("Bazzie") and Sergeant Kelly ("Kelly"), and various Doe police officers

Case 3:22-cv-00585-G-BK   Document 37   Filed 08/14/23   Page 2 of 20   PageID 434

stemming from events that took place at a local restaurant. Doc. 3. The Court dismissed Plaintiff's original *Complaint* without prejudice for failure to state a claim and permitted him to file an amended complaint. Doc. 27.

In Plaintiff's *Amended Complaint*, the factual allegations are essentially unchanged. He alleges that, on the day in question, he went to a Golden Chick restaurant, placed an order for Chinese food at the counter, paid, and sat down to wait. Doc. 28 at 3. After he picked up his order, he proceeded to a different register to place a to-go order for chicken. Doc. 28 at 3. Upon realizing that his chicken order was incorrect, Plaintiff attempted to address the situation with the cashier, but a "[d]iscord of personality's [sic]" arose. Doc. 28 at 4. While a second cashier was attempting to refund Plaintiff's money, he continued to "exchange words" with the first cashier. Doc. 28 at 4. The restaurant owner then approached Plaintiff with a bat and repeatedly ordered him to leave, and shortly thereafter an employee with a stun gun also confronted him. Doc. 28 at 4. Plaintiff sat down at a table to call 911, but the restaurant owner and several employees pulled him out of his chair, dragged him out of the restaurant, and threw his money on the ground. Doc. 28 at 4. Around this time, Bazzie and other Dallas Police Department officers arrived at the scene. Doc. 28 at 4-5. Plaintiff now identifies these formerly unknown defendants as Officers Mason, Ortiz, Charmoli, Mullins, Bresnahan, Martinez, Razo, and Garcia Romero (the "Former Doe Officers" and, collectively with Bazzie and Kelly, the "Defendant Officers"), but specifies Bazzie was the "officer in charge." Doc. 28 at 3, 5.

After some discussion in front of the restaurant, during which the Former Doe Officers did not allow Plaintiff "to fully explain the situation," Bazzie went inside to investigate Plaintiff's claim that restaurant personnel had assaulted and robbed him. Doc. 28 at 4, 6-7. Upon her return, Bazzie informed Plaintiff she did not see any evidence on the restaurant's

2

security footage that Plaintiff had been assaulted and that "[Plaintiff] caused this problem." Doc. 28 at 5, 7. Plaintiff denied this and told Bazzie she was "a liar." Doc. 28 at 7. Bazzie then "made [Plaintiff] the criminal on the scene by detaining [him]" so she could issue a criminal trespass warning, told him to stop talking, and repeatedly threatened to take him to jail. Doc. 28 at 6-7. Plaintiff alleges the Former Doe Officers on the scene failed to intervene to help him, restrained him on the ground, and mocked him. Doc. 28 at 5-7.

Kelly subsequently arrived and informed Plaintiff the restaurant owner was within his rights to demand that Plaintiff leave his store, at which point Bazzie again threatened to take Plaintiff to jail. Doc. 28 at 6. Plaintiff left and proceeded directly to a nearby police substation to register a complaint. Doc. 28 at 6. When Kelly arrived at her supervisor's behest, she "failed to help" Plaintiff and instead issued him an additional report number for his complaint of assault and robbery. Doc. 28 at 6.

Plaintiff sues under 42 U.S.C. §§ 1981, 1983 and 1985 for: (1) violation of his Fourth Amendment rights for seizing him without probable cause; (2) violation of his right to equal protection based on his race; and (3) violation of his right to "redress the violence he endured at the restaurant." Doc. 28 at 2, 6-12. Bazzie, Kelly, and the City now move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. APPLICABLE LAW

### A. Rule 12(b)(6)

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To overcome a Rule 12(b)(6) motion, a plaintiff's "complaint must contain either direct allegations on every material point necessary to sustain a

3

recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Twombly*, 550 U.S. at 572 (citation omitted). Nevertheless, a complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation and quotation omitted). A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

### B. Section 1983

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation omitted). To state a claim under section 1983, a plaintiff must allege facts showing the defendant (1) deprived him "of a right 'secured by the Constitution and the laws' of the United States" and (2) was acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978) (citation omitted).

### C. *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223,

4

231 (2009) (citation omitted). The qualified immunity inquiry involves two prongs which the Court must answer affirmatively to subject an official to liability: (1) whether the facts a plaintiff has alleged establish a violation of a constitutional right; and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 232 (citation omitted). A court may begin its assessment with either prong. *Id.* at 236 (*overruling in part Saucier v. Katz*, 533 U.S. 194 (2001)). "Qualified immunity questions should be resolved 'at the earliest possible stage in litigation.'" *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232); *see, e.g.*, *Turner v. Lieutenant Driver*, 848 F.3d 678, 683 (5th Cir. 2017) (addressing a qualified immunity defense raised in a motion to dismiss).

### D.  *Municipal Liability*

A municipality does not automatically incur section 1983 liability for injuries caused solely by its employees, and it "cannot be held liable under [section] 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978); *Johnson v. Deep East Tex. Reg'l Narcotics Task Force*, 379 F.3d 293, 308 (5th Cir. 2004). Rather, to establish municipal liability, "a plaintiff must show that (1) an official policy (2) promulgated by [a] municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted).

A policy or custom can be either (1) a policy statement or rule that is officially promulgated by the county's lawmaking officers or a delegated official; or (2) "[a] persistent, widespread practice of [county] officials or employees, which . . . is so common and well settled as to constitute a custom that fairly represents county policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). "Knowledge on the part of a policymaker that a constitutional violation will likely result" from a given policy or custom is an essential element of section 1983

5

municipal liability. *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003). A plaintiff thus must demonstrate either actual or constructive knowledge of the custom, which is attributable either to the governing body of the municipality or to an official who has been designated as a policymaker. *Bennett*, 735 F.2d at 862. "Where an official policy or practice is unconstitutional on its face," it is assumed that a policymaker is aware of both the policy and "that a constitutional violation will most likely occur." *Burge*, 336 F.3d at 370. Where, however, an alleged policy or custom is facially innocuous, a plaintiff is required to show that "it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citation and internal quotation marks omitted). Finally, to show that the policy at issue was the moving force behind the constitutional violation, there "must be more than a mere 'but for' coupling between cause and effect"; the policy "must be closely related to the ultimate injury" and have "actually caused" the constitutional violation complained of. *Johnson*, 379 F.3d at 310 (citations omitted).

### III. ANALYSIS

#### A. Service of Process on the Former Doe Officers

Plaintiff's response to Defendants' dismissal motions does not address the merits. Instead, Plaintiff asserts that he raises viable claims against the Former Doe Officers, and the Court should not address the instant motions until service of process has been executed on each of them. Doc. 33 at 1-2.

On January 17, 2023, shortly after Plaintiff filed his *Amended Complaint*, summonses issued to the Former Doe Officers. Doc. 29 at 9-24. The returns of service reflect that the Former Doe Officers were served by mail with return receipt requested at unspecified addresses.

Doc. 36 at 1-8. Service on the Former Doe Officers is flawed, however, because Plaintiff did not comply with either the federal or Texas rules governing service of process. Rule 4(e) provides that an individual may be served by, *inter alia*, (1) "delivering a copy of the summons and of the complaint to the individual personally"; (2) "leaving a copy of each at the individual's dwelling . . . with someone of suitable age and discretion who resides there"; or (3) "delivering a copy of each to an agent authorized" to accept service. FED. R. CIV. P. 4(e)(2). There is no indication on the returns of service here indicating that any of these requirements have been satisfied. *See Calhoun v. City of Hous. Police Dep't*, 855 F. App'x 917, 921 (5th Cir. 2021) (holding that certified mail service on police officers was insufficient because the plaintiff did not demonstrate that the city secretary who received the summons was an agent designated to accept service on the officers' behalf).

Rule 4(e) also permits service of process to be made by following state law. FED. R. CIV. P. 4(e)(1). In Texas, a party can deliver the summons and complaint to a defendant by registered or certified mail, return receipt requested. TEX. R. CIV. P. 106(a)(2). Certain information must be included with the return, including the address at which service was made. TEX. R. CIV. P. 107(b). If service is made by mail, the process server also must file "the return receipt with the addressee's signature." TEX. R. CIV. P. 107(c). Neither of these requirements has been satisfied here. *See Ayika v. Sutton*, 378 F. App'x 432, 434 (5th Cir. 2010) (holding that service was insufficient where the summons was addressed to the defendants personally but the return receipt lacked their signatures).

The time for Plaintiff to effect service of process on the Former Doe Officers expired on April 17, 2023, 90 days after he filed his *Amended Complaint* naming them. FED. R. CIV. P. 4(m). "If a defendant is not served within 90 days after the complaint is filed, the court—on

7

motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id*. "If the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*.

Ordinarily, the Court would extend the time for Plaintiff to effect service of process on the Former Doe Officers. However, as explained below, an extension in this case would be futile because Plaintiff's *Amended Complaint* fails to state any claim upon which relief can be granted. *See Green v. Harris Cnty.*, No. H-16-893, 2019 WL 338243, at *6-8 (S.D. Tex. Jan. 28, 2019)) (declining to permit the plaintiff to remedy defective service on police chief because doing so would be futile where the complaint failed to state claim against him), *adopted by* 2022 WL 17069856 (S.D. Tex. Nov. 17, 2022).

### B. Officer Bazzie and Sergeant Kelly

#### 1. Unlawful Detention Under the Fourth Amendment

Bazzie argues that, as the Court previously found, qualified immunity bars Plaintiff's Fourth Amendment claim against her because Plaintiff failed to plead sufficient facts showing she initially detained him without legal justification or that she lacked probable cause to detain him for criminal trespassing after she viewed the restaurant's video footage of the altercation. Doc. 30 at 6-8. Kelly asserts she is entitled to qualified immunity because Plaintiff still does not allege that she was personally involved in his detention. Doc. 30 at 8.

"The Fourth Amendment does not proscribe all contact between the police and citizens, but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)). There are "three tiers of

8

police-citizen encounters: communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause." *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. Unit B 1982); *see also Florida v. Bostick*, 501 U.S. 429, 439 (1991) ("The Fourth Amendment . . . does not proscribe voluntary cooperation" with police). Accordingly, if "a reasonable person would feel free to disregard the police and go about his business," the encounter is consensual and "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Bostick*, 501 U.S. at 434 (citation omitted). "Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *Delgado*, 466 U.S. at 216 (holding that an initially consensual encounter between a police officer and a citizen can transform into a seizure only if "a reasonable person would have believed" he was not free to leave) (citation omitted).

The "reasonable person" standard is an objective one and "is concerned not with the citizen's subjective perception . . . but only with what the officers' words and actions would have conveyed to a reasonable and innocent person." *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003) (citations omitted). Courts consider several non-exclusive factors in determining whether a reasonable person would feel free to terminate an encounter with law enforcement: "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with an officer's request might be compelled." *Id.* at 337 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

9

As before, the Court conducts the analysis in this case in two steps—first considering Plaintiff's initial contact with Bazzie, followed by his interactions with Bazzie and Kelly after Bazzie reviewed the restaurant's security camera footage.

Plaintiff's allegations with respect to the initial encounter fail to invoke Fourth Amendment protections. By his own account, Plaintiff initiated the encounter by calling 911. Doc. 28 at 2. When Bazzie and other officers arrived, they did not allow him "to fully explain the situation," and when Bazzie asked him what he wanted her to do, Plaintiff responded "I want everyone who put they hands on my person arrested for assault/battery and robbery/attempt [sic] robbery." Doc. 28 at 6. Bazzie stated "I will go inside and look at the security camera" to which Plaintiff responded "ok." Doc. 28 at 6-7.

While Plaintiff alleges the Former Doe Officers had him "restrained on the ground" and "trapped in a corner," Doc. 28 at 5, the overall context indicates Plaintiff was waiting outside the restaurant for Bazzie to return. *See also* Doc. 28 at 6 (averring that Plaintiff attempted to call 911 again after Bazzie exited the store). No detention occurred at this point. Plaintiff does not claim any of the Former Doe Officers displayed a weapon or gave any verbal cues suggesting he was compelled to remain at the scene. *See Mask*, 330 F.3d at 337. Indeed, Plaintiff complains the officers made light of the situation by laughing at him and mocking his complaints. *See* Doc. 28 at 5 (alleging that Officer Mason told Plaintiff to "hire a lawyer and sue us," to which Plaintiff responded "I don't need a lawyer[,] I'll do it myself.").

Plaintiff also submitted video clips from the Defendant Officers' body cameras, which the Court has considered. *See Randall D. Wolcott, M.D., P.A.*, 635 F.3d at 763. Put simply, the footage does not support Plaintiff's contention that he was restrained in any way. Rather, he stayed on the scene recounting his story and making small talk with some of the Defendant

10

Officers and waited for Bazzie to write up her report while Kelly went inside to review the restaurant's video footage. Under these circumstances, no objectively reasonable person in Plaintiff's position would have believed he was not free to leave at that point. *See Delgado*, 466 U.S. at 216.

Once Bazzie emerged from the restaurant, however, the dynamic allegedly shifted. Taking Plaintiff's allegations as true, after reviewing the security footage, Bazzie informed Plaintiff she did not see any evidence he had been assaulted and that he had "caused this problem." Doc. 28 at 5. Plaintiff denied this and told Bazzie "you are a liar straight to her body camera." Doc. 28 at 7. Bazzie then "made [Plaintiff] the criminal on the scene by detaining [him]" so she could issue a "criminal trespass warning citation," taking his phone to tell the 911 dispatcher to disregard Plaintiff's subsequent call, telling him to "shut up," and repeatedly threatening to take him to jail if he kept talking. Doc. 28 at 5-7. Kelly subsequently arrived and informed Plaintiff the restaurant owner could demand that Plaintiff leave his store at which point Bazzie again threatened to take Plaintiff to jail if he kept talking. Doc. 28 at 6. At the end of the encounter, Bazzie told Plaintiff to leave and "have a good day," and he walked away. Plaintiff proceeded to a nearby substation to complain. Doc. 28 at 6.

These allegations indicate Bazzie briefly detained Plaintiff and issued him either a trespass warning or a citation. Doc. 28 at 6. For present purposes, the Court will assume Plaintiff was cited for criminal trespassing which necessitates probable cause. *Berry*, 670 F.2d at 591. A person commits the misdemeanor of criminal trespass "if he 'enters or remains on or in property of another ... without effective consent and the person . . . received notice to depart but failed to do so.'" *State v. Meru*, 414 S.W.3d 159, 163 (Tex. Crim. App. 2013) (quoting TEX.

11

PENAL CODE § 30.05(a)(2)). "Notice" includes an "oral or written communication by the owner or someone with apparent authority to act for the owner." TEX. PENAL CODE § 30.05(b)(2)(A).

"Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of the arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (emphasis in original) (quotation omitted). To overcome Bazzie's qualified immunity defense, Plaintiff must not only allege that she lacked probable cause but also that she was "objectively unreasonable in believing there was probable cause for the [citation]." *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017) (citations omitted). Put differently, qualified immunity protects officers if they had "arguable (that is, reasonable but mistaken) probable cause for the [citation]." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 207 (5th Cir. 2009).

The Court concludes Bazzie had probable cause to believe Plaintiff had committed the offense of criminal trespassing. The allegations in Plaintiff's complaint indicate he refused to leave the restaurant after the owner ordered him to do so following a dispute. Doc. 28 at 4. This led the owner and store personnel to physically remove Plaintiff from the premises, at which time "a Dallas Police Officer" personally observed him being dragged out the door.[1] Doc. 28 at 4. After reviewing the restaurant's security footage, Bazzie told Plaintiff she did not see any evidence he had been assaulted or robbed and only saw Plaintiff throwing his receipt on the counter. Doc. 28 at 7. Based on Plaintiff's admitted refusal to leave the restaurant following the owner's demand, Bazzie had arguable probable cause to cite him for criminal trespassing. *See*

[1] Based on the Incident Data Sheet Report attached to Plaintiff's *Amended Complaint*, it appears the reference is to Bazzie as she was the responding officer and drafted the report. Doc. 28-1 at 18.

*Meru*, 414 S.W.3d at 163; TEX. PENAL CODE § 30.05(a)(2)). While Plaintiff accuses Bazzie of lying about the security footage, "subjective intent, motive, or even outright animus are irrelevant in a determination of qualified immunity based on arguable probable cause to arrest." *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000).

Plaintiff's claim against Kelly fares no better. Supervisory officials are not liable under section 1983 for the actions of subordinates under a theory of vicarious liability. *Turner*, 848 F.3d at 695. Accordingly, Kelly is not liable for any acts which occurred before she arrived on the scene. *Id.* The only remaining issue then is whether Plaintiff adequately alleges Kelly violated his Fourth Amendment rights after she arrived. *Id.* To make this showing, Plaintiff must demonstrate Kelly was either personally involved in the alleged constitutional deprivation or engaged in wrongful conduct causally connected thereto. *Id.* According to Plaintiff's allegations Kelly's only involvement was (1) informing Plaintiff that the restaurant owner had the right to demand he leave the premises; and (2) "failing to help him" after he complained to Kelly's superior. Doc. 28 at 6. This is not sufficient to plead a Fourth Amendment claim. Even assuming Kelly tacitly or explicitly approved of Bazzie's actions, as stated above, Bazzie had arguable probable cause to find Plaintiff was unlawfully trespassing on the property. As such, Plaintiff's claim that Kelly refused to assist him following his complaint does not implicate the Fourth Amendment.

Because Plaintiff has not pled sufficient facts to establish that either Bazzie or Kelly violated his Fourth Amendment rights, they are entitled to qualified immunity and Plaintiff's claims against them should be **DISMISSED**. *See Defrates v. Podany*, 789 F. App'x 427, 431-32 (5th Cir. 2019) (holding off-duty police officer had probable cause to arrest a parent at his son's off-campus school event, and thus was entitled to qualified immunity, where the officer knew the school had issued the parent a

13

criminal trespass warning, and a school administrator told the officer the parent had refused to leave);

*Pena v. Bexar Cnty.*, 726 F. Supp. 2d 675, 693 (W.D. Tex. 2010) (holding court security officers were entitled to qualified immunity on Fourth Amendment claim brought by a disabled individual arrested for criminal trespass as officers reasonably believed the arrestee's animal was not a service dog which violated county policy).

    2. *Equal Protection Claim*

The gist of Plaintiff's equal protection claim is that "Defendants" treated him as they did because he is black and was attempting to report a crime. *See* Doc. 28 at 5 & *passim* (alleging Bazzie threatened to take him to jail "because he is Black and can't be right"). Bazzie and Kelly argue this claim should be dismissed because Plaintiff has not pled they treated him differently than other crime victims who call 911. Doc. 30 at 8-9.

"The Equal Protection Clause directs that persons similarly situated should be treated alike." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citation omitted), *decision clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999). To maintain an equal protection claim, a plaintiff generally must allege he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro, L.L.C.*, 568 F.3d at 212 (citation omitted).

Plaintiff's allegation that Bazzie and Kelly treated him differently than other crime victims because he is black is entirely conclusory and thus insufficient to support an equal protection claim. *Collins*, 224 F.3d at 498 (noting that a court cannot "accept as true conclusory allegations or unwarranted deductions of fact."). Even a "[police] officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation." *Williams*, 180 F.3d at 706 ("Where the conduct at issue consists solely of speech,

14

there is no equal protection violation."); *Club Retro, L.L.C.*, 568 F.3d at 213 (holding plaintiffs failed to state an equal protection claim where they did not allege any defendant said they "targeted [the club] because it was minority-owned and attracted a mixed-race and mixed-ethnicity crowd," and the purported absence of similar raids on a club that catered to white patrons did not carry plaintiffs' burden). Accordingly, Plaintiff's equal protection claim should be **DISMISSED**.

   3. *"Right to Redress"*

Plaintiff alleges that Defendants violated his right to petition for "redress [of] the violence he endured" and have "chilled" his ability to call for help after being assaulted. Doc. 28 at 11. Bazzie and Kelly argue Plaintiff has not pled facts establishing a recognized federal constitutional or statutory right to such. Doc. 30 at 4 n.6. The Court agrees. Even assuming Plaintiff is attempting to raise a First Amendment retaliation claim, the Court previously dismissed Plaintiff's earlier claim to the same effect, and his *Amended Complaint* does not rectify the problems the Court identified. See *Chalmers v. City of Dallas*, No. 3:22-CV-585-G-BK, 2022 WL 17039086, at *6-7 (N.D. Tex. Nov. 16, 2022) (Toliver, J.) (holding that Plaintiff had not set forth any plausible facts suggesting either that Bazzie's or Kelly's alleged actions would chill a person of ordinary firmness from reporting a crime or that "either officers' actions were substantially motivated by their opposition to him calling 911 or complaining about his treatment at the restaurant."), *adopted by* 2022 WL 17069571 (N.D. Tex. Nov. 17, 2022) (Fish, J.). Plaintiff's "right to redress" claim should thus be **DISMISSED**.

   4. *Section 1981*

Bazzie and Kelly argue Plaintiff's claim under 42 U.S.C. § 1981 fails because he does not plead that they racially discriminated against him in the making or enforcement of a contract as required by section 1981. Doc. 30 at 9-10.

To state a claim under section 1981, a plaintiff must allege that (1) he is a member of a racial minority; (2) the defendant intended to discriminate against him based on his race; and (3) the discrimination concerned at least one of the activities enumerated in the statute. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). The Supreme Court held in *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989), however, that section 1981 does not provide a separate cause of action against local government entities. Rather, a plaintiff must raise a claim under section 1983 to remedy a state actor's section 1981 violation. *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 463 (5th Cir. 2001). Plaintiff's section 1981 claim should therefore be **DISMISSED**.

5. *Section 1985(3)*[2]

Lastly, Bazzie and Kelly argue that Plaintiff's claim under 42 U.S.C. § 1985 fails because he Plaintiff does not plausibly plead the existence of a conspiracy under section 1985(3). Doc. 30 at 9-10. While section 1985(3) "was meant to reach private activity," it does not "apply to all tortious, conspiratorial interferences with the rights of others." *Earnest v. Lowentritt*, 690 F.2d 1198, 1202 (5th Cir. 1982) (quotation and citation omitted). Thus, to keep the statute within its intended scope, the act in furtherance of the conspiracy must be independently illegal and the conspirators' actions must be motivated by class or race-based animus. *Id.* For a section 1985(3) claim to withstand a Rule 12(b)(6) motion, a plaintiff must allege: (1) a conspiracy; (2) that exists "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws"; and (3) an act in furtherance of the conspiracy which results in either injury to a person or his property or the deprivation "of any right or privilege of a citizen of the

---

[2] While Plaintiff does not identify the subsection under which he brings his section 1985 claim, the only applicable one is the third as Plaintiff does not allege that he is a federal officer or that Bazzie and Kelly interfered with a federal judicial proceeding. *See* 42 U.S.C. §§ 1985(1)-(2).

16

United States." *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). "Mere conclusory allegations are insufficient" to state a claim under section 1985 as plaintiffs "must plead the operative facts upon which their claim is based." *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987).

The Court concurs with Bazzie and Kelly that the factual allegations in Plaintiff's *Amended Complaint* are conclusory and therefore insufficient to state a claim for relief under section 1985(3) insofar as he alleges the existence of a conspiracy only briefly. *See* Doc. 28 at 5 (he was "trapped in a corner by serious co-conspirators to deny him access to justice"). There is a separate basis for dismissal of Plaintiff's section 1985(3) claim as well. The "intracorporate conspiracy doctrine" invokes the "long-standing rule . . . that a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (internal quotation marks omitted). Application of the doctrine extends to state entities and their employees. *Id.* (holding that "a school board and its employees constitute a single legal entity which is incapable of conspiring with itself for the purposes of § 1985(3)."). Accordingly, Plaintiff's section 1985(3) claim should be **DISMISSED**.

### C. City of Dallas and Official Capacity Claims Against the Defendant Officers

The City argues Plaintiff's section 1983 claims should be dismissed because the *Amended Complaint* (1) does not sufficiently allege that any of the Defendant Officers violated his constitutional rights; (2) does not comport with *Monell*'s pleading requirements; and (3) his official-capacity claims against the Defendant Officers are duplicative of his claims against the City. Doc. 31 at 4-5. The City requests that the Court dismiss Plaintiff's section 1981 and 1985(3) claims for reasons similar to those outlined above. Doc. 31 at 6-7.

17

Upon consideration, the Court finds the City's arguments are well taken. Only Plaintiff's allegations against Bazzie and Kelly contained any level of factual detail and, as discussed above, they do not adequately state a claim on any cause of action. By extension, the virtually nonexistent factual allegations pertaining to the Former Doe Officers are insufficient to survive dismissal. Because Plaintiff has not adequately stated a claim against any of the Defendant Officers, there is no basis for liability on the part of the City. See *Alpha v. Hooper*, 440 F.3d 670, 672 (5th Cir. 2006) (holding that where the plaintiff's constitutional claims failed, there was no basis for the county's liability). Plaintiff's official-capacity claims against the Defendant Officers are subject to dismissal because the claims "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55); *see also Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) (holding that when a party sues a government employee in her official capacity as well as the governmental entity itself, "[t]he official-capacity claims and the claims against the governmental entity essentially merge."). Finally, Plaintiff's section 1981 and 1985(3) claims against the City should be dismissed for the reasons described *supra* in Section III.B.

## IV. LEAVE TO AMEND

Ordinarily, a *pro se p*laintiff should be granted leave to amend his complaint prior to dismissal. *Brewster v. Dretke,* 587 F.3d 764, 767-68 (5th Cir. 2009). However, leave to amend is not required when a plaintiff has already pled his "best case." *Id.* at 768. Although Plaintiff requests leave to amend, Doc. 28 at 12, he already has amended his complaint once and his factual allegations are essentially identical, so it appears he has made his best case. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (per curiam) (holding that dismissal of a *pro se*

18

case with prejudice is appropriate if the court determines the plaintiff has alleged his best case). As discussed herein, Plaintiff's claims are fatally infirm so permitting another amendment would be futile and cause needless delay. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations) (citation omitted).

## V. CONCLUSION

For the reasons set forth above, the *Motions to Dismiss* should be **GRANTED** and Plaintiff's claims should be **DISMISSED WITH PREJUDICE** as to Bazzie, Kelly, and the City pursuant to Rule 12(b)(6). Plaintiff's claims against Defendants Mason, Ortiz, Charmoli, Mullins, Bresnahan, Martinez, Razo, and Garcia Romero should be **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 4(m) and, alternatively, for failure to state a legally cognizable claim..

**SO RECOMMENDED** on August 14, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).